IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL V. PETRAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1402-N |
| | § | |
| GARY MOLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Charles Kaplan ("Kaplan") and Kaplan & Associates, LLP's (collectively the "Kaplan Defendants") motion to dismiss [71], Defendants Glacial Energy Holdings, Inc., Glacial Energy Holdings I, LLC, Glacial Energy Holdings II, LLC, Glacial Energy of New York, Inc., Glacial Energy of Texas, Inc., Glacial Energy, Inc. (the "Glacial Entities"), Gary Mole, and Julie Cannon's motion to dismiss [74], Defendants Don Bernard, Elizabeth Bernard, and Koby Bernard's (the "Bernards") motion to dismiss [75], and Elizabeth Bernard and Koby Bernard's motion for sanctions [84]. For the reasons that follow, the Court grants the Bernards' motion to dismiss, grants in part and denies in part the two other motions to dismiss, and denies the motion for sanctions.

### I. ORIGINS OF THE MOTIONS TO DISMISS AND FOR SANCTIONS

Plaintiff Michael Petras alleges that Mole induced him to develop and work for Franklin Power Corporation ("Franklin"), a retail electric provider, by promising to invest $10 million in the venture. Petras alleges that this representation was the first of many acts

in furtherance of a fraudulent scheme to utilize Petras' idea and business plan to market electric power ("the Scheme").  Later, Mole, Franklin's Chairman of the Board, terminated Petras' employment.  Afterward, Mole, on behalf of Franklin, entered into an agreement with Allegra Family Limited Partnership ("Allegra"), an entity in which Petras is allegedly a partner and which owned Franklin stock, for Franklin to repurchase its own shares for $2 million from Allegra.  Franklin subsequently made a few payments on the stock, but allegedly never paid the $2 million amount in full.  Petras alleges that Allegra assigned him the right to receive payment from Franklin.  A few months after the purchase agreement, Kaplan, an attorney, jointly represented Petras and Mole in the renegotiation of Franklin's $2 million obligation.  Franklin went out of business in 2006, and the Glacial Entities took over its assets.

Petras brought suit in June 2011 against Mole, Kaplan and his associated businesses,[1] the Glacial Entities, and various officers/directors of Franklin and the Glacial Entities,[2] alleging professional malpractice, negligence, fraudulent transfer, money had and received, breach of fiduciary duty, fraud, negligent misrepresentation, conspiracy, and civil Racketeer

---

[1]Defendant Kaplan & Associates, LLP is a partnership Kaplan allegedly owns, and Defendant Touchdown Properties, LLC is a company Kaplan allegedly controls.

[2]Petras alleges that: Defendant Julie Cannon is a shareholder, member, director, and employee of one or more Glacial Entities; Defendant Donald Bernard was a shareholder, officer, and director of Franklin and is a current officer and Chairman of the Board of Defendant Generales Des Mines Au Congo, SPRL ("Gemico"); Defendant Elizabeth Bernard was a director of Defendant Glacial Energy of Texas and an officer of Franklin; Defendant Peter Koeck is a shareholder or member of one or more of the Glacial Entities; Defendant Andrew Marriner was a director of Franklin and is a current officer of one ore more of the Glacial Entities; Defendant Koby Bernard was and/or is a director of Defendant Gemico; and Defendant Gemico is a company the Glacial Entities own.

Influenced and Corrupt Organizations Act ("RICO") claims.  Defendants brought the instant

motions to dismiss in October 2011, and Elizabeth and Koby Bernard brought their motion

for sanctions in November 2011.

## II. RULE 12(B)(6) AND 12(B)(2) STANDARDS

### A. *Rule 12(b)(6) Standard*

When considering a Rule 12(b)(6) motion to dismiss, the Court must determine

whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of*

*Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable

complaint must include "enough facts to state a claim to relief that is plausible on its face"

– i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence

of [the claim or element]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see*

*also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)."  *Id.* (internal citations omitted).

As the Supreme Court observed:

> Two working principles underlie our decision in *Twombly*. First, the
> tenet that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do not
> suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion
> to dismiss we must take all of the factual allegations in the complaint as true,
> we "are not bound to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   *Id.* at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.   [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)].   But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).

In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the Court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.   *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B. Rule 12(b)(2) Standard

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).   If the district court chooses to decide the motion to dismiss without an evidentiary hearing, the plaintiff may satisfy this burden by presenting a prima facie case for personal jurisdiction.   *Wilson*, 20 F.3d at 648 (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).   Courts will take allegations of the complaint as true,

ORDER – PAGE 4

except those allegations "controverted by opposing affidavits," and courts will resolve all conflicts in the facts in favor of the plaintiff. *Thompson*, 755 F.2d at 1165 (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71 (5th Cir. 1983)). In making their determination, courts may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* (citing *Wash. v. Norton Mfg., Inc.*, 588 F.2d 441, 443 (5th Cir. 1979)).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). A nonresident defendant is subject to the personal jurisdiction of a federal court sitting in diversity to the same extent that the defendant would be amenable to the jurisdiction of a state court in the same forum. *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995). This Court, therefore, must apply Texas law to ascertain if Texas may assert long-arm jurisdiction over the Bernards.

The Texas long-arm statute confers jurisdiction to the limits of the federal constitution. *Id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). The Court, therefore, need only concern itself with the federal due process inquiry. *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (citations omitted).

ORDER – PAGE 5

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum which results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–77 (1985). The due process clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

To establish minimum contacts, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)). The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (quoting *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has considered whether a defendant's contacts with the forum make it reasonable to require the defendant to defend the particular suit in that forum. *Shaffer v. Heitner*, 433 U.S. 186, 203 (1977).

Two types of in personam jurisdiction may be exercised over a nonresident defendant: specific and general. Specific jurisdiction exists if the cause of action is related to, or arises from, the defendant's contacts with the forum, and those contacts meet the due process

standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Id.* General jurisdiction, on the other hand, may be found where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 415 (1984) (citations omitted).

Under either a general or specific jurisdiction analysis, however, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart*, 772 F.2d at 1191 (quoting *Burger King*, 471 U.S. at 474). The purposeful availment requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King*, 471 U.S. at 475). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992) (citation omitted).

A court must consider all factors when making the purposeful availment inquiry, since "no single factor, particularly the number of contacts, is determinative." *Stuart*, 772 F.2d at 1192. "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to

the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th

Cir. 1982).

### III. THE COURT DISMISSES PETRAS' RICO AND CONSPIRACY TO VIOLATE CIVIL RICO CLAIMS AGAINST ALL OF THE RICO DEFENDANTS[3]

To state a civil RICO claim, a plaintiff must allege the existence of "(1) a person who

engages in (2) a pattern of racketeering activity, (3) connected to the acquisition,

establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355

(5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d

118, 122 (5th Cir. 1996)).   A pattern of racketeering activity consists of two or more

predicate criminal acts that are (a) related and (b) amount to or pose a threat of continued

criminal activity.   *Id.*   The latter prong is referred to as the "continuity" requirement.

The person alleged to have violated RICO's section 1962(c) must participate in the

operation or management of the RICO enterprise.   *Reves v. Ernst & Young*, 507 U.S. 170,

185 (1993).   A RICO enterprise is "any individual, partnership, corporation, association, or

other legal entity, and any union or group of individuals associated in fact, although not a

legal entity," 18 U.S.C. § 1961(4), that is "separate and apart from the pattern of activity in

which it engages," *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (citing *Atkinson v.

Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987)).   A civil RICO claim has a

four year statute of limitations that runs from the time the plaintiff discovers or should have

---

[3]Petras groups the following Defendants as the "RICO Defendants": Gary Mole;
Touchdown Properties, LLC; Julie Cannon; Charles Kaplan; Kaplan & Associates, LLP;
Donald Bernard; Elizabeth Bernard; Peter Koeck; and Andrew Marriner.

discovered the injury.  *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 777 (5th Cir. 2000).

And, a conspiracy to violate civil RICO claim necessarily relies upon a properly pleaded

RICO claim.  18 U.S.C. § 1962(d).

First, the Court dismisses the RICO claims against the Kaplan Defendants because

Petras has failed to allege that they meet the requisite level of conduct to hold them liable

under RICO.  To satisfy the conduct prong of section 1962(c), Petras must allege that the

Defendants participated in the "operation or management" of the RICO enterprise.  *See*

*Reves*, 507 U.S. at 179.  Petras alleges that Defendants Koby Bernard, Gemico, and the

Glacial Entities together make up the RICO enterprise.  Pl.'s First Am. Compl. ¶ 9 [70].  Yet,

he alleges that Kaplan's involvement was limited to seeking potential investors for Petras'

initial business plan, participating in the development of Franklin, and controlling Defendant

Touchdown Properties, LLC, an entity that committed to finance Franklin.  Pl.'s First Am.

Compl. ¶¶ 12, 13, 14, 26.  These allegations fall short of alleging that the Kaplan Defendants

participated in the operation or management of the RICO enterprise: Koby Bernard, Gemico,

or the Glacial Entities.  Thus, the Kaplan Defendants are not proper RICO defendants, and

the Court dismisses Petras' RICO claims against them.

Next, the Court dismisses Petras' RICO claims against the RICO Defendants as barred

by the four year statute of limitations.  Petras became aware or should have become aware

of his injuries well over four years before he filed suit.  Petras' claimed injuries – that Mole

terminated him from employment at Franklin and that Franklin defaulted on its obligation

to Allegra, payment of which was assigned to him[4] – both occurred in 2004. Pl.'s First Am.

Compl. ¶¶ 21-22, 28-29.  Petras was undoubtedly aware of each in 2004: he knew that he was

terminated in 2004, and he admits that Franklin was in default of its $2 million obligation by

the end of 2004, *see id.* at ¶ 29.  The fact that he claims that he did not discover the overall

alleged Scheme until 2010 does not toll the statute of limitations.  In the RICO context, it is

awareness of injury that begins the clock.  *Rotella v. Wood*, 528 U.S. 549, 555-58 (2000)

(adopting injury discovery rule for RICO claims); *Love*, 230 F.3d at 774 (adopting the

separate accrual rule for RICO claims).  Thus, the time to bring suit based on these injuries

expired in late 2008.  Accordingly, the Court dismisses Petras' RICO claims against the

RICO Defendants (Count 14).[5]  And, because Petras has failed to state a civil RICO claim,

---

[4]Petras claims that he was further injured when Franklin transferred its assets to the Glacial Entities.  However, the Court finds that this injury is not cognizable because it is not an injury to Petras' business or property as required under RICO, *see, e.g. Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001), because Petras no longer had an interest in Franklin at the time Franklin transferred its assets, *see* Pl.'s First Am. Compl. ¶ 22, 48 (stating that Petras agreed to sell back his stock in Franklin to the company in 2004 and that Franklin transferred its assets to the Glacial Entities in 2005).  The Court assumes, but does not decide, that Petras' other two alleged injuries are cognizable under RICO.  Specifically, for the second alleged injury, see *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.*, 777 F. Supp. 493, 494-96 (E.D. La. 1991), holding that RICO claims are assignable, and Tex. Bus. & Com. Code § 2.210(e) and *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 41 S.W.3d 270, 276 (Tex. App. – Hous. [14th Dist.] 2001, pet. granted), *rev'd on other grounds by* 146 S.W.3d 79 (Tex. 2004), for the proposition that rights under a contract, including choses of action, are assignable.

[5]Given that the statute of limitations defense applies generally to all the RICO Defendants whether they moved to dismiss or not, and given that Petras extensively briefed this issue in his responses to the instant motions to dismiss, the Court finds that sua sponte dismissal of Petras' claims against the RICO Defendants who did not move to dismiss is not unfair.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 409 (3d ed. 2004) ("Even if a party does not make a formal motion under Rule 12(b)(6), the

---

ORDER – PAGE 10

he cannot sustain a conspiracy to violate civil RICO claim. Thus, the Court also dismisses Petras' conspiracy to violate civil RICO claim against the RICO Defendants (Count 15).

## IV. THE COURT DISMISSES THE BERNARDS FOR LACK OF PERSONAL JURISDICTION

The Bernards move to dismiss under Rule 12(b)(2) alleging that the Court lacks personal jurisdiction over them. Because the Court dismisses Petras' RICO claims, it addresses the Bernards' motion as a Court sitting in diversity.

The Court first turns to Petras' argument that jurisdiction is appropriate because the Bernards aimed a tort at Texas. Although the Texas long arm statute specifically states that jurisdiction is appropriate where a defendant has committed a tort aimed at Texas, TEX. CIV. PRAC. & REM. CODE § 17.042, the Texas Supreme Court has found that this alone cannot confer jurisdiction under due process, *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788-93 (Tex. 2005). Accordingly Petras' argument is not a correct application of the law. As the Texas Supreme Court explained, directing-a-tort jurisdiction improperly "shifts the court's focus from the 'relationship among the *defendant*, the forum, and the litigation' to the relationship among the '*plaintiff*, the forum . . . and the litigation.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005) (internal citations omitted). It also impermissibly equates the jurisdictional inquiry with the underlying merits of the case. *Id.* Although the Supreme Court has once found specific

---

district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."). This reasoning similarly applies to the remaining claims that the Court dismisses sua sponte in this Order.

jurisdiction based on alleged wrongdoing intentionally directed at a forum resident, *see Calder v. Jones*, 465 U.S. 783 (1984), a case decided the same day clarifies that the operative factor in the Court's decision was the extent of the defendant's activities, not merely the victim's residence, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). *Michiana*, 168 S.W.3d at 789. Additionally, the Texas Supreme Court has foreclosed the use of a conspiracy allegation to support jurisdiction. *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 10 (Tex. App. – San Antonio 2004, pet. denied) (citing *Michel v. Rocket Eng. Corp.*, 45 S.W.3d 658, 671 (Tex. App. – Fort Worth 2001, no pet.)). Thus, the Court goes on to examine the Bernards' contacts with Texas.

In addition to his general argument that the Bernards participated in the Scheme to defraud him, Petras alleges that the Bernards had the following specific contacts with Texas: (a) Donald Bernard wired $500,000 to Franklin, a Texas-based company, (b) Donald Bernard was an attorney licensed in Texas who resigned in lieu of discipline in 1994, and (c) Elizabeth Bernard was a former director of Glacial Energy of Texas, a Nevada corporation whose principal place of business was in Dallas, Texas. *See* Pl.'s Am. Compl. ¶¶ 8, 9, 25. Noticeably absent is any reference to Koby Bernard. Thus, Koby Bernard does not have minimum contacts with the state of Texas. And, both Donald and Elizabeth's "contacts" with Texas do not amount to the continuous and systematic contacts necessary to establish jurisdiction; nor do Petras' causes of action arise from these alleged contacts. Thus, the Bernards do not individually have minimum contacts with the state of Texas.

Petras next argues that the Court should attribute the Glacial Entities' contacts to the Bernards to establish personal jurisdiction. The general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation unless a basis exists for disregarding the corporate fiction. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Ramirez v. Hariri*, 165 S.W.3d 912, 916 (Tex. App. – Dall. 2005, no pet.). Because common law or statutory law cannot override due process considerations, veil-piercing for jurisdictional purposes involves different elements of proof than substantive veil-piercing. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). Jurisdictional veil-piercing requires that the plaintiff prove that the individual controls the internal business operations and affairs of the corporation. *See Crithfield v. Boothe*, 343 S.W.3d 274, 284 (Tex. App. – Dall. 2011, no pet.) (citing *PHC-Minden*, 235 S.W.3d at 175). "The degree of control the [individual] exercises must be greater than that normally associated with . . . directorship; the evidence must show that the two [] cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* Fraud, vital to piercing the corporate veil for nonjurisdictional purposes, has no place in assessing contacts to determine jurisdiction. *PHC-Minden*, 235 S.W.3d at 175. Similarly, a single business enterprise allegation is insufficient for jurisdictional purposes. *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 412 (Tex. App. – Dall. 2008, no pet.) ("[T]he Texas Supreme Court has not endorsed 'single business enterprise' as a theory under which an entity may be held responsible for the debts of another, and it clearly has not endorsed 'single business enterprise' as a basis for imputing the jurisdictional contacts of one entity

to another." (citing *PHC-Minden*, 235 S.W.3d at 173)).    Instead, in making their determination, courts will consider the following as proof of alter ego status: (1) the payment of alleged corporate debt with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate.  *Crithfield*, 343 S.W.3d at 285 (citing *Nichols v. Lin*, 282 S.W.3d 743, 747 (Tex. App. – Dall. 2009, no pet.)); *see also* KNOX D. NUNNALLY & RONALD G. FRANKLIN, 2 TEXAS PRACTICE GUIDE TORTS § 8:92 (2011).  Stock ownership, overlap of directors and officers, and exercise of the usual level of control associated with stockholders are factors that alone are insufficient to pierce the corporate veil.  *PHC-Minden*, 235 S.W.3d at 175.    The party seeking to impute the corporation's jurisdictional contacts has the burden of proof.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002).

Here, Petras alleges that the Court should pierce the Glacial Entities and Gemico's veils because they "were used to perpetuate crimes and frauds upon [him]."  Pl.'s First Am. Compl. ¶ 113.  As discussed above, this is not the test for jurisdictional veil-piercing. However, even if it were, Petras does not allege sufficient facts to show that the Bernards personally used the Glacial Entities and Gemico to defraud him.[6]  Analyzing the *Crithfield*

---

[6]*See* WILLIAM MEADE FLETCHER, 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.32 (2012) (stating under perpetuation of fraud veil-piercing theory, that the individual against whom the doctrine is invoked must have perpetrated the fraud and must have done so while he was abusing corporate privilege).

jurisdictional veil-piercing factors, the Court holds that Petras has not alleged sufficient facts to demonstrate the requisite level of unity between the Bernards and the corporate entities. He did not allege that the Bernards commingled funds, represented that they would financially back the entities, diverted company profits for personal use, or that the companies were undercapitalized. Accordingly, the Court will not attribute the Glacial Entities and Gemico's contacts to the Bernards. Thus, the Court has no personal jurisdiction over the Bernards and it dismisses them from the suit.

## V. THE COURT DISMISSES PETRAS' CLAIM FOR MONEY HAD AND RECEIVED

A claim for money had and received arises where the defendant obtains money which in equity and good conscience belongs to the plaintiff. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. – El Paso 1997, no writ). "[I]t is not premised on wrongdoing, but seeks to determine to which party, in equity, justice, and law, the money belongs; and it seeks to prevent unconscionable loss to the payor and unjust enrichment to the payee." *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App. – Dall. 2008, pet. denied) (internal citations omitted).

Here, Petras alleges that he is an owner of Franklin's assets because he created some or all of them and because he is a shareholder in Allegra, which in turn was a part shareholder in Franklin; that the Glacial Entities have those assets; that Defendants have profited from those assets; and that he is entitled to the money generated from the assets. Pl.'s First Am. Compl. ¶¶ 18, 22, 36, 77. However, Petras concedes in his complaint that Allegra, not he, owned shares of Franklin, and that Franklin repurchased those shares from

Allegra. *See id.* at ¶ 32 ("Petras and his wife, on behalf of Allegra Family Partnership *which held the Franklin Power shares . . . .*" (emphasis added)). Although Petras, as alleged assignee of Allegra's right to receive payment from Franklin for Allegra's Franklin stock, may have had a claim against Franklin for nonpayment,[7] he does not have a valid claim for money had and received if he himself is not the owner of Franklin's assets. Additionally, although Petras chronicles his involvement in the creation of certain of Franklin's assets, *see id.* at ¶ 20, he does not allege facts showing that creation translated into ownership. Accordingly, because Petras has not alleged that he is entitled to the money allegedly had and received, the Court dismisses Petras' claim against all Defendants (Count 5).

## VI. THE COURT ANALYZES PETRAS' REMAINING CLAIMS FOR LIMITATIONS PERIOD VIOLATIONS

Each of Petras' state law claims has a limitations period ranging from one to four years.[8] The general rule is that the limitations period begins to run at the time the alleged wrong occurs. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977). However, equitable tolling doctrines may act to lengthen the time to file suit. For example, for injuries that are

---

[7]The Court takes no position as to whether Petras had or has this claim.

[8]Professional Malpractice: 2 years, *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988); Negligence: 2 years, *Morris v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 869 (Tex. App. – San Antonio 1997, no writ); Fraudulent Transfer and Intentional Fraudulent Transfer: 1, 2, or 4 years, TEX. BUS. & COM. CODE § 24.010; Money Had and Received: 2 or 4 years, *Pollard v. Hanschen*, 315 S.W.3d 636, 641 (Tex. App. – Dall. 2010, no pet.); Constructive Trust: 4 years, *Carr v. Weiss*, 984 S.W.2d 753, 762 (Tex. App. – Amarillo 1999, pet. denied); Breach of Fiduciary Duty: 4 years, TEX. CIV. PRAC. & REM. CODE § 16.004; Fraud: 4 years, *id.*; Negligent Misrepresentation: 2 years, *Tex. Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302 (Tex. App. – Fort Worth 1991, writ denied); Conspiracy: 2 years, *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 82 (Tex. App. – San Antonio 1996, writ denied).

inherently undiscoverable and also objectively verifiable, the discovery rule may apply so that the limitations period does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, facts giving rise to the legal claim. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (citing *Comp. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)); *Jackson v. West Telemktg. Corp. Outbound*, 245 F.3d 518, 524 (5th Cir. 2001) (quoting *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 335 (Tex. App. – San Antonio 2000, no pet.)) (applying Texas law). Additionally, where a defendant acts to conceal facts forming the basis of an injury, the doctrine of fraudulent concealment tolls the statute of limitations until the claimant discovers, or with reasonable diligence should have discovered, facts that could support the cause of action. *Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc.*, 157 F.3d 1032, 1035 (5th Cir. 1998) (applying Texas law). Finally, where the defendant's conduct reasonably induces the plaintiff not to file suit within the limitations period, courts apply the doctrine of equitable estoppel to allow the plaintiff's claims to proceed. *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App. – Dall. 2005, no pet.). Because Petras' claimed injuries all occurred prior to four years before he filed suit, *see* Pl.'s First Am. Compl. ¶¶ 10-41 (indicating that the alleged Scheme was complete in 2005 after certain Defendants established the Glacial Entities), in order for Petras' state claims to survive, one of the tolling doctrines must apply. The Court now considers whether the doctrines apply to Petras' claims.

### A. The Court Declines to Dismiss Petras' Professional Malpractice and Negligence Claims Against the Kaplan Defendants

First, Petras alleges professional malpractice and negligence against Kaplan. Petras alleges that Kaplan breached his duties of loyalty and candor, as well as failed to act in accordance with the standard of care ordinarily practiced by professionals providing legal representation, when he failed to disclose material facts to Petras. Specifically, Petras alleges that until May 2010, Kaplan failed to disclose "facts pertaining to Mole, [the] Glacial Entities, the liquidation of Franklin Power, the transfer of Franklin Power assets[,] or Mole and Cannon's continued residence in the United States." Pl.'s First Am. Compl. ¶ 54. Petras also avers that Kaplan had a conflict of interest because he jointly represented Petras and Mole during the 2005 renegotiation of Franklin's $2 million obligation, as well as represented some of the other Defendants in matters while also representing Petras from 2003 to 2010. *Id.* at ¶¶ 46, 53.

Given the facts alleged,[9] the Court holds that Petras pleads facts supporting tolling of the malpractice and negligence claims until May 2010. Petras acknowledges that ahead of the 2005 renegotiation, Kaplan "offered to jointly represent Petras and Mole." Pl.'s First Am. Compl. ¶ 30. Although Petras agreed to the joint representation, he avers that he would not have allowed Kaplan to represent him if he had known of his "extensive and ongoing representation of Mole and other [D]efendants." *Id.* Petras claims that he did not discover the full scope of Kaplan's representation of Mole and the other Defendants until May 2010 *Id.* at ¶ 48. And, the factual allegations in the complaint do not otherwise affirmatively

_____

[9]The Kaplan Defendants are, of course, free to contest these allegations, but that is beyond the scope of a motion to dismiss.

demonstrate that Petras could have discovered the scope and nature of Kaplan's representation of other clients prior to Kaplan's disclosure of his continued relationship with Mole in 2010. This is bolstered by the fact that under Texas law, Kaplan had an affirmative duty to fully disclose to Petras "the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any" prior to his joint representation of Mole and Petras. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.06(c)(2), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2012) (Tex. State Bar R. art. X, § 9). Thus, Petras' breach of fiduciary duty and negligence claims did not begin to accrue until May 2010 when he discovered the harm. Thus, based on the face of the pleadings, the Court declines to dismiss Petras' professional malpractice and negligence claims against the Kaplan Defendants[10] (Counts 1 and 2).

### B. The Court Dismisses Petras' Fraudulent Transfer Claims

Petras brings two statutory causes of action against Mole, Cannon, the Kaplan Defendants, Donald Bernard, and the Glacial Entities under the Texas Uniform Fraudulent Transfer Act ("TUFTA") – fraudulent transfer under section 24.005 and intentional fraudulent transfer under section 24.006. TEX. BUS. & COM. CODE §§ 24.005, 24.006. TUFTA contains a statute of repose rather than a statute of limitation. The Supreme Court of Texas distinguished statutes of repose from statutes of limitation as follows:

---

[10]The claims are proper as to Kaplan & Associates, LLP because under Texas partnership law, a partnership is liable for injury to a third party as a result of a wrongful act or omission or other actionable conduct of a partner acting in the ordinary course of business of the partnership or with the authority of the partnership. TEX. BUS. ORG. CODE § 152.303.

Statutes of repose typically provide a definitive date beyond which an action cannot be filed. Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action. Repose then differs from limitations in that repose not only cuts off rights of action after they accrue, but can cut off rights of action before they accrue. And while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time. Thus, the purpose of a statute of repose is to provide absolute protection to certain parties from the burden of indefinite potential liability.

*Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009) (internal citations and quotation marks omitted). Thus, without exception, Petras must have brought his fraudulent transfer claim within one year from the date of transfer, TEX. BUS. & COM. CODE § 24.010(a)(3), and must have brought his intentional fraudulent transfer claim within four years after the date of transfer or within one year after he did or reasonably could have discovered the transfer, *see* TEX. BUS. & COM. CODE §§ 24.010(a)(1), (a)(2).

The transfer that Petras alleges was fraudulent was the 2005 transfer of Franklin's assets to the Glacial Entities. Pl.'s First Am. Compl. ¶ 70. His section 24.006 fraudulent transfer claim is thus barred because the cause of action was extinguished in 2006. And, Petras' section 24.005 intentional fraudulent transfer claim is also barred. At least by May 2010,[11] Petras discovered that Franklin transferred its assets to the Glacial Entities. Pl.'s First Am. Compl. ¶ 48. Thus, his intentional fraudulent transfer claim was extinguished in May 2011. Petras filed suit in June 2011. So, this claim is also time barred. Accordingly, the

_____

[11]The Court takes no position as to whether Petras could have reasonably discovered the alleged fraudulent transfer prior to May 2010.

Court dismisses Petras' fraudulent transfer and intentional fraudulent transfer claims (Counts 3 and 4).

### C. The Court Declines to Dismiss Petras' Breach of Fiduciary Duty Claim

Petras brings a breach of fiduciary duty claim against Mole and Marriner alleging that they breached their duties to Franklin, its shareholders, and its creditors by (a) usurping a corporate opportunity, (b) not making good faith efforts to grow and continue Franklin's business, and (c) conspiring to and carrying out the conspiracy to fraudulently transfer Franklin's assets away from Franklin. *Id.* at ¶¶ 83-85. As the Court has already explained, Petras has conceded that he personally did not hold Franklin shares. *See supra* Part D. Thus, the only way that he has standing to bring a claim against Franklin's directors is if he has standing as a creditor of Franklin.

The general rule is that corporate officers and directors owe fiduciary duties only to the corporation and not to the corporation's creditors, unless there has been prejudice to the creditors. *Plas-Tex, Inc. v. Jones*, 2000 WL 632677, at *4 (Tex. App. – Austin 2000, pet. denied) (unpublished) (citing *In re Tufts Elecs., Inc.*, 746 F.2d 915, 917 (1st Cir. 1984)). Such prejudice arises where there has been a fraudulent conveyance, or where there has been a transaction which led to corporate insolvency. *See In re Tufts*, 746 F.2d at 917; *Tweedie Footwear Corp. v. Fonville*, 115 S.W.2d 421, 425 (Tex. App. – Dall. 1938, writ denied) ("'A solvent corporation may deal with its assets and dispose of them in any way it wishes with the consent of its directors and stockholders, and creditors have no right to complain if the corporation is not thereby rendered insolvent."' (quoting *Sweet v. Lang*, 14 F.2d 762, 766

(8th Cir. 1926)).  Additionally, when a corporation is insolvent,[12] under Texas law,[13] a fiduciary relationship arises between the officers and directors of the corporation and its creditors, *Plas-Tex, Inc.*, 2000 WL 632677, at *4 (citing *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 477 (Tex. App. – El Paso 1989, writ denied)), so that the creditor can maintain a direct action against the officers and directors, *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. App. – Hous. [14th Dist.] 1973, no writ).  This duty includes the duty to preserve the value of the corporate assets to pay corporate debts without preferring one creditor over another or preferring themselves to the injury of other creditors. *Id.* (citing *Tigrett v. Pointer*, 580 S.W.2d 375, 383-85 (Tex. App. – Dall. 1978, writ ref'd n.r.e.)).  A creditor may seek to hold directors liable only for the portion of assets that would have been available to satisfy his own debt under a pro rata distribution. *Id.* (citing *Tigrett*, 580 S.W.2d at 384).

Petras alleges that he is a creditor of Franklin because, as assignee of Allegra's right to payment for the buyback of its shares, Franklin owes Petras approximately $2 million. *See* Pl.'s First Am. Compl. ¶ 32.  Petras also alleges that Mole's actions led Franklin to insolvency, *see id.* at ¶ 35, and that once Franklin was insolvent, Mole and Marriner failed to preserve the value of the corporate assets to pay corporate debts by allowing the Glacial

---

[12]This motion does not require the Court to distinguish between insolvency and the zone of insolvency. *Compare Floyd v. Hefner*, 2006 WL 2844245 (S.D. Tex. 2006) *with In re VarTec Telecom, Inc.*, 2007 WL 2872283 (Bankr. N.D. Tex. 2007).

[13]In the absence of information regarding the state of Franklin's incorporation, or any showing that that state's law is different from Texas law, the Court assumes Texas law applies.

Entities to obtain Franklin's assets, *see id.* at ¶ 36. Petras further alleges that he did not learn of Franklin's insolvency or transferred assets until May 2010. *See id.* at 48. And, the factual allegations in the complaint do not otherwise affirmatively demonstrate that he could have so discovered those facts any sooner. Thus, Petras has sufficiently stated a timely claim against Mole and Marriner for breach of fiduciary duty.

Petras also brings a claim of breach of fiduciary duty against the Kaplan Defendants, arguing that Kaplan breached his duty of good faith by participating in the Scheme and facilitating the fraudulent transfer of Franklin's assets. *See id.* at ¶ 86. Petras alleges that he did not learn of Kaplan's involvement in the Scheme and the asset transfer until May 2010 because Kaplan and other Defendants fraudulently concealed details of the Scheme. Thus, Petras has adequately alleged facts supporting tolling of the limitations period, and the Court declines to dismiss this claim against the Kaplan Defendants. Accordingly, the Court declines to dismiss Petras' breach of fiduciary duty claims (Count 7).[14]

### D. The Court Declines to Dismiss Petras' Fraud and Negligent Misrepresentation Claims

Petras next alleges that Mole and the Kaplan Defendants are guilty of fraud because they made numerous intentional misrepresentations or made representations without regard to the statements' truth or falsity to Petras during the course of, and to facilitate, the alleged Scheme. *See id.* at ¶¶ 90-103. In order to plead a fraud claim, Petras must allege facts that show (1) Mole and Kaplan made a material representation, (2) the representation was false,

---

[14]The Court assumes without deciding that Petras can also assert derivative claims for harm to Franklin. The parties are free to reurge the issue as the action proceeds.

(3) when Mole and Kaplan made the representation, they knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) Mole and Kaplan made the representation with the intent that Petras should act upon it, (5) Petras acted in reliance on the representation, and (6) Petras thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am. & Four Partners, LLC*, 341 S.W.3d 323, 337 (Tex. 2011) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). To successfully allege negligent misrepresentation, Petras must allege that (1) Mole and Kaplan made the representation in the course of their business or in a transaction in which they had a pecuniary interest, (2) Mole and Kaplan supplied false information for the guidance of others in their business, (3) Mole and Kaplan did not exercise reasonable care or competence in obtaining or communicating the information, and (4) Petras suffered a pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Petras' fraud and negligent misrepresentation claims largely center around Mole's alleged representation that he would provide Franklin with $10 million. Petras claims that this representation induced him to help form Franklin, develop assets for it, and then ultimately agree on Allegra's behalf to $2 million buyback of Allegra's shares. *See* Pl.'s First Am. Compl. ¶¶ 15-17, 19-22. Kaplan allegedly then falsely represented to Petras that renegotiating the $2 million obligation would allow Franklin to obtain approximately $53 million in financing. *See id.* at ¶¶ 31-32. Petras alleges that he justifiably relied on these representations and was consequently pecuniarily harmed, presumably by, among other

ORDER – PAGE 24

things, agreeing on Allegra's behalf to sell its shares and agreeing to a renegotiation after nonpayment. *See id.* at ¶¶ 22, 32, 95-96, 101-02. Additionally, Petras claims that he did not discover the fraud or negligent misrepresentations and/or that Mole and Kaplan fraudulently concealed them until May 2010, and the factual allegations in the complaint do not otherwise affirmatively demonstrate that Petras could have discovered the alleged misrepresentations any sooner. *See id.* at ¶ 48. Accordingly, Petras has adequately alleged timely fraud and negligent misrepresentation claims against Mole and the Kaplan Defendants,[15] and the Court declines to dismiss them.

### E. The Court Declines to Dismiss Petras' Conspiracy Claim Against the RICO Defendants[16]

Next, Petras alleges conspiracy against the RICO Defendants. To allege a conspiracy claim, a plaintiff must allege (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998) (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). A defendant cannot be liable for conspiracy unless someone in the alleged conspiracy commits an underlying tort. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Here, Petras alleged that the RICO Defendants worked in concert to defraud him, the

---

[15]The Court also finds that the allegation satisfy Rules 8 and 9(b). *See* FED. R. CIV. P. 8, 9(b). Petras has alleged the who, what, when, where, and how of the alleged misrepresentations and has alleged enough information to apprise Defendants of the claims against them and allow them to prepare a defense.

[16]This is a distinct cause of action from the conspiracy to violate civil RICO claim discussed above in part III.

unlawful overt acts underlying the outstanding fraud claims against Mole and the Kaplan Defendants and breach of fiduciary duty claims against Mole, Marriner, and the Kaplan Defendants, that he was damaged as a result, and that he did not discover the conspiracy until May 2010. Additionally, the factual allegations in the complaint do not otherwise affirmatively demonstrate that Petras could have discovered the alleged conspiracy any sooner. Thus, Petras has stated a timely claim for conspiracy against the RICO Defendants (Count 10).

### VII. THE COURT DENIES THE MOTION FOR SANCTIONS

Elizabeth and Koby Bernard filed a motion for sanctions alleging that Petras included them as defendants only to harass Don Bernard, their husband and father respectively. They argue that there exist no facts to support their inclusion in the action, as Elizabeth works seasonally for the National Park Service, and Koby is a full-time university student who was a teenager during much of the alleged Scheme. They request that the Court sanction Petras' counsel and order Petras to pay their attorneys' fees.

Under Rule 11, when an attorney signs a pleading, the attorney certifies, among other things, that he has conducted a reasonable inquiry into the facts and law. *See* FED. R. CIV. P. 11; *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). Rule 11(b) prohibits an attorney from filing a federal action for an improper purpose. FED. R. CIV. P. 11(b)(1). Where it is objectively ascertainable that an attorney has submitted a paper to the court for an improper purpose, the court may impose sanctions. *See* FED. R. CIV. P. 11(C)(1); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003).

Petras alleges that Elizabeth Bernard was a director of Glacial Energy of Texas, Inc. and that Koby Bernard is or was a director of Gemico. In support, he provides an application for certificate of authority to transact business in the State of Texas signed by Mole from May 2005 listing Elizabeth as sole director of Glacial Energy of Texas, *see* App. Supp. Pl. Michael V. Petras' Resp. to Mot. Dismiss First Am. Compl. Filed by Donald Bernard, Elizabeth Bernard, and Koby Bernard 10-11 [83] [hereinafter Pl.'s App.], a printout from Gemico's website listing Koby as a member of its Board of Directors, *id.* at 63, and a statement allegedly written by Koby which states that he has worked in the Democratic Republic of Congo, *see* Decl. Diane M. Barker Supp. Defs. Elizabeth Bernard & Koby Bernard's Mot. Sanctions Pursuant to Fed. R. Civ. P. 11(b)(1) & Rule 11(b)(3), Ex. E, at 13 [84-1], where Gemico is located, Pl.'s App. 63. He also provides documentation from a bank account owned by Glacial Energy of New York that shows that Koby Bernard was wired at least $3200 from its account. *See id.* at 23, 27.

In his first amended complaint, Petras includes Elizabeth in the group of RICO Defendants – the group that allegedly conspired to and did implement the Scheme to defraud Petras. *See* Pl.'s First Am. Compl. ¶ 10. He alleges that Koby is part of the RICO enterprise, stating that he is "subject to a constructive trust of benefits, consideration and profits received directly or indirectly as a result of the RICO Defendants' fraudulent acts or unlawful plan of action." *Id.* at ¶ 9. The only claim he formally asserts against Koby is money had and received. *See id.* at ¶¶ 76-78.

ORDER – PAGE 27

The Court finds that Petras' allegations do not warrant sanctions. Petras' allegations center on the idea that he has a right to Franklin's assets which were subsequently transferred to the Glacial Entities as part of an elaborate scheme to steal his ideas and creations. On that basis, Petras alleged that all directors and officers of the Glacial Entities were part of and/or profited from the scheme. Additionally, he asserted that others, including Koby, profited from Franklin's assets. Based on the above documentation, the Court finds that Petras has presented enough evidence to indicate that his claims against Elizabeth and Koby were nonfrivolous. Although the Court dismissed Elizabeth and Koby from the suit for lack of personal jurisdiction, the Court does not find that Petras brought his claims for improper purposes, in bad faith, or solely to harass Don Bernard. Accordingly, the Court denies Elizabeth and Koby Bernard's motion for sanctions.

## CONCLUSION

The Court dismisses Counts 3-6 and 11-15 against all Defendants,[17] and dismisses all claims against the Bernards.[18] The Court denies the motion for sanctions. Accordingly, the following claims remain: professional malpractice against the Kaplan Defendants, negligence against the Kaplan Defendants, breach of fiduciary duty against Mole, Marriner, and the

---

[17]The Court dismisses Counts 6 and 11-13 because they are not proper causes of action (Constructive Trust, Alter Ego, Piercing the Corporate Veil, and Equitable Tolling). However, the Court permits Petras to argue that these doctrines apply as he sees fit.

[18]Because all claims have been dismissed against certain Defendants, the Court orders the Clerk of the Court to dismiss the following Defendants from the suit: Donald Bernard; Elizabeth Bernard; Koby Bernard; Generales Des Mines Au Congo, SPRL; Glacial Energy Holdings, Inc.; Glacial Energy Holdings I, LLC; Glacial Energy Holdings II, LLC; Glacial Energy of New York, Inc.; Glacial Energy of Texas, Inc.; and Glacial Energy, Inc.

Kaplan Defendants; fraud against Mole and the Kaplan Defendants; negligent misrepresentation against Mole and the Kaplan Defendants; and conspiracy against the RICO Defendants.

Signed May 17, 2012.

David C. Godbey
United States District Judge