**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL V. PETRAS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 3-11cv1402-N** |
| | § | |
| **GARY MOLE, et al.,** | § | |
| | § | |
| *Defendants.* | § | |

---

### DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S
### BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50, Defendants Charles Kaplan and Kaplan & Associates, LLP (collectively, the "Kaplan Defendants") file this Brief in Support of their Motion for Judgment as a Matter of Law, and would show the court as follows:

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................III

I.  PRELIMINARY STATEMENT .............................................................. 1

II. RELEVANT FACTUAL BACKGROUND ............................................. 2

III.  RELEVANT HOLDINGS FROM DOCKET NO. 198 .......................... 5

IV. ARGUMENTS AND AUTHORITIES .................................................. 5

    A.   Petras' Claims Are Barred By The Applicable Statutes Of Limitation......... 5

    B.   Petras Has Improperly Fractured His Legal Malpractice Claim. ............... 12

    C.   Even Assuming Petras' Claim For Breach Of Fiduciary Duty Survives The Anti-Fracturing Doctrine, Petras' Breach Of Fiduciary Duty Claim Still Fails............................................................................................................ 13

    D.   Even Assuming Petras' Claim For Fraud Survives The Anti-Fracturing Doctrine, Petras' Fraud Claim Still Fails. ................................................. 15

    E.   Even Assuming Petras' Claim For Negligent Misrepresentation Survives The Anti-Fracturing Doctrine, Petras' Negligent Misrepresentation Claim Fails. ........................................................................................................ 16

    F.   Even Assuming Petras' Claim For Conspiracy Survives The Anti-Fracturing Doctrine, Petras' Claim For Conspiracy Still Fails On The Basis Of Causation. ................................................................................................. 18

    G.   Petras' Claims Are Barred By Waiver.................................................... 18

    H.   Petras' Tort Claims Are Barred By The Economic Loss Doctrine. ........... 19

V. CONCLUSION........................................................................................ 20

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

# TABLE OF AUTHORITIES

## CASES

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.). .................................................................................................................. 14

*Baxter v. Gardere Wynne Sewell, LLP.*, 182 S.W.3d 460, 464 (Tex. App.—............................. 8, 9

*Bayou-Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1993, writ denied ................................................. 9

*Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 640 (S.D. Tex. 2007) ........................... 9

*Chessmore v. Wal-Mart Stores, Inc.*, NO. H-08-1642, 2009 U.S. Dist. LEXIS 92474 (S.D. Tex. Oct. 5, 2009 .............................................................................................................. 10

*Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc.*, 1 F.3d 374, 377 (5th Cir. 1993) .. 11

*Crean v. Chozick*, 714 S.W.2d 61, 62 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) ............ 11

*D.S.A. Inc. v Hillsboro ISD*, 973 S.W.2d 662, 663-64 (Tex. 1998).............................................. 18

*Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 301 (Tex. App.—Dallas 2009, no pet.) .................... 19

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011)................................. 10

*Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991) ............................................... 7

*Isaacs v. Schleier*, 356 S.W.3d 548, 563 (Tex. App.—Texarkana 2011, pet. denied) .................. 7

*KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999) (emphasis added) ........................................................................................................ 10

*Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ................. 8

*McClung v. Johnson*, 620 S.W.2d 644, 647 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) ..... 11

*Miksch v. Exxon Corp.* 979 S.W.2d 700, 706 (Tex. App. – Houston [14th Dist.] 1998, no pet.) ...................................................................................................................................17

*Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ....................................................................... 7

*Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ................................................ 6

*Morris v. Enron Oil & Gas Co.*, 948 S.W.2d 858 (Tex. App.—San Antonio 1997, no writ) ........ 6

*Murphy v. Gruber*, 241 S.W.3d 689, 693-694 (Tex. App. Dallas 2007, pet. denied) ............ 12, 13

*Myer v. Cuevas*, 119 S.W. 3d 830, 836 (Tex. App.—San Antonio 2003, no pet.)....................... 13

*Pollard v. Hanschen*, 315 S.W.3d 636 (Tex. App.—Dallas 2010, no pet. .................................... 7

*Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995) .................... 14

*Regus Mgmt. Grp., LLC v. Int'l Bu. Mach. Corp.*, 2008 WL 1836360, at *6 (N.D. Tex. 2008).. 19

*Riojas v. Phillips Properties, Inc..*, 828 S.W.2d 18, 22 (Tex. App.—Corpus Christi 1991, no writ)........................................................................................................................... 10

*Rotella v. Wood*, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) ....................... 10

*Roubinek v. Select Portfolio Servicing, Inc.*, 2012 WL 2358560, *3 (N.D. Tex. 2012)............... 19

*Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App.—Austin 1997, pet. denied).................................................................................................... 9

*SB Int'l, Inc. v. Jindal*, Ca. No. 3:06-CV-1174-G ECF, 2007 U.S. Dist. LEXIS 34999, 13-14 (N.D. Tex. May 14, 2007).......................................................................................... 9

*Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App. – Amarillo 2007, no pet.).......................... 16

*Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717............................................................... 6

*Southwestern Bell Telephone Co. v. DeLaney*, 809 S.W.2d 493, 494 (Tex. 1991) ..................... 19

*Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. Tex. 2001)............ 10

*Texas American Corp. v. Woodbridge Jt. Venture*, 809 S.W.2d 299 ............................................. 6

*Thomas v. CNC Invs., LLP*, 234 S.W.3d 111, 124 (Tex. App.—Houston [1st Dist.] 2007, no pet.) .................................................................................................................................................... 14

*Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 623-24 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ............................................................................................................................. 13

*Treuil v. Treuil*, 311 S.W.3d 114, 120 (Tex. App.—Beaumont 2010, no pet.) ..................... 10, 11

*Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) ............................................................. 6, 11

*Won Pak v. Harris*, 313 S.W.3d 454, 457-58 (Tex. App.—Dallas 2010) (pet. denied).............. 12

**STATUTES**

TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 2010)) ........................................... 6

*Tex. Civ. Prac. & Rem. Code* § 16.003 ......................................................................................... 9

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

## I.  PRELIMINARY STATEMENT

Consistent with this Court's Order dated January 31, 2013 (Docket No.198), judgment as a matter of law is appropriate in this case as to all claims concerning the Kaplan Defendants on the affirmative defense of statute of limitations.  As found by this Court: "The facts also show that Plaintiff had at least constructive knowledge, and thus actual notice, that Mole was involved with another corporation in 2005 and that Franklin ceased to exist in 2006.  The Court holds that these facts establish that Plaintiff had actual knowledge of the facts giving rise to his claims as a matter of law."  Docket 198, p. 6.

This is consistent with the testimony of Roger McAulay on day two of trial:

```
 7    Q.    Okay.  Do you know what damages Michael Petras is
 8    seeking in this case?  Do you have a dollar figure?
 9    A.    I believe the dollar figure is $2 million less whatever
10    he has been paid, plus punitive damages.
11    Q.    Okay.  So he is looking for the money that he should
12    have been paid in 2005 under the stock purchase agreement?
13    A.    That's my understanding.
14    Q.    Okay.  So your testimony hasn't changed.  Right?  That
15    in the fourth quarter of 2005, Franklin Power had gone away
16    and wasn't going to --
17    A.    It was no longer operational.  There was no prospect
18    of anything getting paid.
19    Q.    And Michael Petras knew that.  Right?
20    A.    I believe that, yes.
21    Q.    So if Mr. Kaplan had lied to you and Mr. Petras about
22    Gary Mole putting money into Franklin Power, you-all knew
23    that by the fourth quarter 2005, didn't you?
24    A.    Yes.
```

Therefore, Plaintiff had actual knowledge of his injuries no later than the end of the fourth quarter of 2005.

## II. RELEVANT FACTUAL BACKGROUND

1.      Public records establish that Franklin was formed as a Delaware corporation on October 3, 2003, and ceased to exist as an entity on March 1, 2006.  Def. Ex.73.

2.      Plaintiff was employed as an executive of Franklin for approximately nine months—from Franklin's formation in October 2003 until his termination on June 30, 2004.

3.      Allegra Family Limited Partnership ("AFLP"), an affiliate of Plaintiff, bought 200,000 shares of Franklin common stock for $200.  *See id*.

4.      Touchdown Properties LLC, ("Touchdown"), an entity owned by Mole, bought 600,000 shares (or 60 percent of Franklin) for $600.00."  Def. Ex. 17.

5.      On October 10, 2003, seven days after Franklin was formed, Mole sought personal financial help from Plaintiff.  Def. Ex. 15. On January 5, 2004, Mole again asked Plaintiff for personal financial help, stating that "money is very tight."  Def. Ex.29.  On January 31, 2004, Mole asked Plaintiff for limited financial help—this time $50—and clearly indicated that his financial resources were limited.  Def. Ex. 32.  On February 1, 2004, Mole indicated to Plaintiff that he could find no one else to borrow from.  *See id*.

6.      From 2004 to 2011, **Plaintiff did not believe that Mole was a truthful person**, and therefore could not have reasonably relied upon anything said by Mole.  (RFA Nos. 27-34). Def. Ex. 56.

7.      When Plaintiff left Franklin in June 2004, he executed a stock repurchase agreement between Plaintiff, AFLP, and Franklin.  Def. Ex. 47.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

8.      On September 28, 2004, Plaintiff wrote to McAulay and stated his opinion that "everything Gary [Mole] says is a lie."

9.      Franklin defaulted on the June 2004 repurchase agreement, and on January 15, 2005, Plaintiff, AFLP, and Franklin entered into a final stock repurchase agreement, superseding the original agreement (the "Final Stock Repurchase Agreement").  Def. Ex. 65.

10.     By May 2005, Franklin had defaulted on its payment obligations under the Final Stock Repurchase Agreement.  Def. Ex. 72.

11.     In that context, Plaintiff wrote a May 5, 2005 letter to Defendant Charles Kaplan; which reads in pertinent part:

> On behalf of ALFP, our position is that we don't really care about the various outcomes of Franklin's current situation. We simply are reluctant to give up any of the leverage we currently enjoy, even if that results in Gary refusing to fund Franklin and, therefore, its demise.
>
> . . .
>
> Please remind Gary that we don't need or want to renegotiate.  Franklin going away is actually the best outcome for me, even if he spites himself and throws it into bankruptcy.

Def. Ex. 68.

12.     On May 13, 2005, Plaintiff wrote to Mole and **threatened a lawsuit**.  Def. Ex. 72. He admitted in this important letter that he knew that Franklin was shutting down business and would not survive. *Id.* ("I am sorry to hear that Franklin's Texas subsidiary is about to cease operations. I take no joy in being proven right about Franklin's survival prospects after my departure. . . . you need to contact the USCIS immediately to inform them that you no longer employ any people at Franklin Power"). *Id.*  He also admitted that he was personally aware that

Franklin was in default under the Final Stock Repurchase Agreement. *Id.* ("This sad situation does not change the fact that Franklin Power Company is still in default of its agreement with AFLP and me."). *Id.* He further indicated his intent to personally sue Mole. *Id.*

13.     Plaintiff also admitted in his letter that he was familiar with Franklin's customers and creditors, and threatened that ". . . starting Tuesday morning I will begin contacting all of Franklin's customers (active and potential in Texas and New York), brokers, and creditors to actively seek other parties interested in joining legal action against Franklin Power and you personally." *Id.*

14.     Finally, Plaintiff threatened to contact PUCs in Texas and New York to "notify them of some of your potentially fraudulent business practices to enable them to prevent you from resuming those activities under different business names or with other aliases." *Id.*

15.     By the fourth quarter of 2005, Franklin ceased to do business and it was indisputable that Plaintiff knew he would not be paid any remaining monies pursuant to the Final Stock Repurchase Agreement. *See* McAulay Testimony above from day two of trial.

16.     The conspiracy, as explained by Mr. McAulay, was to deprive Plaintiff of his payment.[1]

17.     On March 1, 2006, Franklin's corporate status became void. Def. Ex. 73.

18.     Plaintiff's sole damage model seeks the benefit of his bargain with Franklin under the terms of the January 2005 Amended Stock Purchase Agreement. ("As such, Plaintiff is

---

[1] *See* Trial Transcript,Vol.I,240:ln18 – 241:ln3.

**DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S
BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW**

*4*

entitled to recover from the Defendants, the amount owed under the Agreement which is $1,960,000.00 ($2,000,000.00 less the $40,000.00 paid) as his lost income or profits.").[2]

### III.  RELEVANT HOLDINGS FROM DOCKET NO. 198

19.   The following holdings are relevant to, and applicable to this Motion:

a.   "The court holds that these facts establish that Petras had actual knowledge [of] the facts giving rise to his claims as a matter of law."  Docket No. 198, p. 6.

b.   "[T]he summary judgment evidence shows that Plaintiff knew of his injury and had either actual or constructive knowledge of the facts giving rise to his claims.  Thus, the discovery rule [does not] toll his claims.  *See id*. at 7.

c.   "The Court holds that, as a matter of law, Petras had actual knowledge of the facts giving rise to his claims, and thus the discovery rule does not apply." *See id*. at 7 fn. 4.

d.   "The tolling doctrine of fraudulent concealment fails for the same reason as the discovery rule: Petras knew of the facts giving rise to his claims against Mole and Cannon at the latest on March 1, 2006."  *See id*. at 7.

### IV. ARGUMENTS AND AUTHORITIES

**A.**   **Petras' Claims Are Barred By The Applicable Statutes Of Limitation.**

20.   Plaintiff's claims all relate to and seek to recover damages from Franklin's failure to pay the $2 million under the Final Stock Repurchase Agreement.  As noted above, Plaintiff knew Franklin was in default of the Final Stock Repurchase Agreement in 2005, believed Mole

---

[2] Petras also seeks fee disgorgement from Kaplan, a theory of recovery not contained in Plaintiff's pleadings. *See* 1st Amd Complaint, ¶¶ 136, 139.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

to be a liar, had threatened Mole and Franklin with a lawsuit, had told Kaplan he intended to sue

Mole, and was on constructive notice as of March 2006 that Franklin ceased to exist.

21.    More than six years after Franklin defaulted on the Final Stock Repurchase

Agreement, on June 27, 2011, Plaintiff initiated this lawsuit for alleged harm, all of which stems

from the alleged non-payment occurring six years prior.    The claims against the Kaplan

Defendants, with their attendant statutes of limitations, are as follows:

| Claim | Statute of Limitations |
|---|---|
| 1. Professional Malpractice | 2 years[3] |
| 2. Negligence | 2 years[4] |
| 3. Breach of Fiduciary Duty | 4 years[5] |
| 4. Fraud | 4 years[6] |
| 5. Negligent Misrepresentation | 2 years[7] |
| 6. Conspiracy | 2 years[8] |

22.    Pursuant to Texas law, the statutes of limitations for the various claims are

between two (2) and four (4) years.  Petras' cause of action accrued and limitations began to run

when the alleged breach occurred by Franklin (in 2005), even if the injury remained

undiscovered.  *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("For the

purposes of the application of limitation statutes, a cause of action can generally be said to

accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such

injury.").  By Plaintiff's own admission, he threatened to sue Mole in 2005 and had threatened to

---

[3]  *See Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988).
[4]  *See Morris v. Enron Oil & Gas Co.*, 948 S.W.2d 858 (Tex. App.—San Antonio 1997, no writ).
[5]  *See Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App.—Eastland 2002, no pet.) (noting that fraud, fraudulent concealment, and breach of fiduciary duty fall within the four year statute of TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 2010)).
[6]  *See id.*
[7]  *See Texas American Corp. v. Woodbridge Jt. Venture*, 809 S.W.2d 299 (Tex. App.—Fort Worth 1991, writ denied).
[8]  *See* TEX. CIV. PRAC. & REM. CODE §16.003.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

sue Franklin during that same timeframe.

23.      "A person is charged with constructive notice of the actual knowledge that he could have acquired by examining public records." *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). "Constructive notice in law creates an irrebuttable presumption of actual notice." *Id*. Therefore, in addition to threatening to sue Mole and Franklin, Petras had actual knowledge that as of March 1, 2006, Franklin ceased to exist.

24.      Therefore, Kaplan has established that Plaintiff's claims for the damages sought are barred by limitations, as a matter of law, subject only to Plaintiff establishing entitlement to a tolling under a tolling doctrine.

### 1.   The "Hughes Doctrine" does not apply to transactional cases.[9]

25.      In *Hughes v. Mahaney & Higgins*, the Texas Supreme Court determined that in a legal malpractice claim involving litigation (as opposed to transactional malpractice) the statute of limitations is tolled until all appeals are exhausted. *See Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991). The *Hughes* tolling doctrine does not apply to malpractice claims involving transactions. *See Isaacs v. Schleier*, 356 S.W.3d 548, 563 (Tex. App.—Texarkana 2011, pet. denied); *Pollard v. Hanschen*, 315 S.W.3d 636 (Tex. App.—Dallas 2010, no pet.) (claims that do not depend on the outcome of underlying litigation are not subject to the *Hughes* tolling doctrine). In this case, Petras has not alleged any negligence in the handling of a litigation matter, nor does his damage model seek to recover "case within the case" damages. Therefore, as a matter of law, the *Hughes* doctrine does not apply to Petras' claims against the Kaplan Defendants in this case.

---

[9] Because Petras has abandoned his legal malpractice and negligence claims, the "Hughes Doctrine" should have no application to the statute of limitations. It is addressed out of an abundance of caution.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

**2.   The equitable tolling doctrine does not save Petras' claims.**

26.     Equitable tolling depends upon a party knowing his injury has accrued and being induced not to timely bring suit.  *See Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex. App.—Austin 1987, writ ref'd n.r.e.).  Equitable tolling also requires a plaintiff to "be diligent to file the cause of action he knows he has; he may not continue to rely upon the defendant's original inducement beyond a point when it becomes unreasonable to do so."  *Id*. at 129.

27.     Plaintiff's tolling argument consists of Kaplan allegedly telling him not to sue Mole.   First, this confirms that Plaintiff was aware of his injury in 2005, defeating his other tolling claims.  Second, nothing in that contention indicates an inducement to Plaintiff not to sue Kaplan.  Third, there is nothing diligent or reasonable with Plaintiff waiting six years to bring suit against Kaplan.  *See Eskew*, 731 S.W.2d at 129 ("The record is silent regarding any semblance of a justification for appellees' delay in bringing suit between September 1979 (when they knew they had a cause of action) and September 14, 1980 (when the bar of limitation first arose).").

28.     Plaintiff has failed to present legally sufficient evidence to establish that Kaplan induced Plaintiff not to sue Kaplan, or that Plaintiff exercised reasonable diligence after Plaintiff had actual knowledge of his injury.

**3.   Fraudulent concealment does not toll the statute of limitations.**

29.     Concealment of one's identity does not toll the statute of limitations when, regardless of the defendant's identity, the plaintiff knows, or reasonably should know he has a cause of action.  *See Baxter v. Gardere Wynne Sewell, LLP.*, 182 S.W.3d 460, 464 (Tex. App.—

Dallas, 2006, pet. denied); *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 640 (S.D. Tex. 2007); *Bayou-Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1993, writ denied).   At a minimum, Plaintiff knew he was injured and had a cause of action against Franklin and Mole in 2005.   Therefore, his knowledge of the injury defeats this tolling argument.   *See Baxter*, 182 S.W. 3d at 464-465.

30.     Further, "[f]raudulent concealment merely defers the statute of limitations until the plaintiff learns or in the exercise of reasonable diligence should have learned of the facts that give rise to its cause of action.   *See Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App.—Austin 1997, pet. denied).   Similar to the equitable tolling argument, Plaintiff has failed to present legally sufficient evidence to establish the diligence component of fraudulent concealment when he waited six years to sue Kaplan.   *See id.*

### 4.   The discovery rule does not toll the statute of limitations.

31.     Pursuant to the discovery rule, "the limitations period is not tolled until a party knows all the details and evidence which may be required to prove his cause of action; rather, the period begins to run when the party discovers, or should have discovered, the general nature of his injury."   *See SB Int'l, Inc. v. Jindal*, Ca. No.  3:06-CV-1174-G ECF, 2007 U.S. Dist. LEXIS 34999, 13-14 (N.D. Tex. May 14, 2007).   The Texas Supreme Court has held that it is an incorrect application of the discovery rule to concede knowledge of a wrongful injury, but then assert that because a plaintiff did not know of other defendants the statute of limitations is tolled.

> The court of appeals held that under this 'new formulation,' a claim does not accrue until plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury. This is incorrect. **The rule in those cases was, as it is in this one, that accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury**.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

The summary judgment evidence established that **the wrongful injury HCH alleges it suffered is the loss of over $621,000** in December 1991 when it refunded the bonds following the premature sale in 1989 of the reserve fund assets. Significantly, HCH sued First Interstate over this precise injury in early 1993, less than two years later. **Indisputably, HCH was aware by then of its injury and that its injury was caused by the wrongful conduct of another**.

**The loss** from the premature sale of the fund assets **should have caused HCH to investigate not only the possibility that First Interstate had mismanaged the fund assets,** as HCH apparently did because it sued First Interstate, but also Peat Marwick's possible  involvement in the mismanagement and loss.

*See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999) (emphasis added); *see also, Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. Tex. 2001) (confirming KPMG's application of the discovery rule).  "Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'"  *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011).

32.    The discovery rule does not extend the limitations if the injury is apparent when it occurs even if all the defendants are unknown. *See Chessmore v. Wal-Mart Stores, Inc.*, NO. H-08-1642, 2009 U.S. Dist. LEXIS 92474 (S.D. Tex. Oct. 5, 2009); *Riojas v. Phillips Properties, Inc..*, 828 S.W.2d 18, 22 (Tex. App.—Corpus Christi 1991, no writ); *Treuil v. Treuil*, 311 S.W.3d 114, 120 (Tex. App.—Beaumont 2010, no pet.)  (citing *Rotella v. Wood*, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) ("But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.")).

33.     Plaintiff has previously argued that the existence of a fiduciary duty tolls the statute of limitations, relying on *Crean v. Chozick*, 714 S.W.2d 61, 62 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.), a case involving legal malpractice.  *Crean* relies upon *McClung v. Johnson*, 620 S.W.2d 644, 647 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) for the proposition that "[a] failure to disclose operates to toll the statute of limitations until the relationship giving rise to the duty ends."  *See id*.  However, in 1988, the Texas Supreme Court implicitly rejected this holding.

> **The McClung court refused to apply the discovery rule, but held that the failure to disclose operates to toll the statute of limitations for so long as the duty exists**, and that duty to disclose ceases when the relationship giving rise to the duty ends. McClung, 620 S.W.2d at 647. **Application of the discovery rule, however, is more consistent with this court's analysis in prior cases addressing the accrual of causes of action for the purposes of statute of limitations. The discovery rule, furthermore, better balances the policies underlying the statute of limitations and the legal malpractice cause of action than does the approach reached by the McClung court**..

*Willis v. Maverick*, 760 S.W.2d 642, 645-646 (Tex. 1988).  The Fifth Circuit has confirmed its interpretation that *Willis* reaffirmed the discovery rule application to legal malpractice claims.  *See Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc*., 1 F.3d 374, 377 (5th Cir. 1993). Therefore, contrary to Petras' assertion, no separate accrual rule exists that tolls a statute of limitations merely because a fiduciary relationship exists.

34.     Because Plaintiff knew of his injury in 2005[10] the discovery rule does not extend the statute of limitations.  *See Treuil*, 311 S.W.3d at 120 ("[I]n cases applying the discovery

---

[10]  Even assuming this Court accepts as true Plaintiff's allegations that Plaintiff was told the Mole would put money into Franklin or that Defendants failed to tell Plaintiff that Mole would not put money into Franklin (which is the basis of Plaintiff's breach of fiduciary duty, fraud and negligent misrepresentation claims), the Plaintiff knew Mole had not put money into Franklin no later than the end of 2005.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

accrual rule, limitations begins to run at the point a claimant has actual or constructive knowledge of facts that would put a reasonable person on notice that he has suffered an injury.").

**B.** **Petras Has Improperly Fractured His Legal Malpractice Claim.**

35.     In accordance with black letter law, Plaintiff's attempt to fracture a legal malpractice claim into multiple causes of action is improper as "Texas courts do not allow plaintiffs to convert what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA." *Murphy v. Gruber*, 241 S.W.3d 689, 693-694 (Tex. App.—Dallas 2007, pet. denied).   Recasting a legal malpractice conflict of interest claim as fraud, breach of fiduciary duty and conspiracy does not survive the anti-fracturing rule. *See   Won Pak v. Harris*, 313 S.W.3d 454, 457-58 (Tex. App.—Dallas 2010) (pet. denied).

36.     Petras' claim is that the Kaplan Defendants did not properly disclose the conflicts of interest to him and failed to adequately advise him about alleged transfers of assets between Franklin in Glacial.[11]   These are legal malpractice claims because the gravamen of Petras' complaint focuses on the quality or adequacy of Kaplan's representation.  *See*, *Won Pak*, 313 S.W.3d at 457.   In particular, Plaintiff argues that the duties of disclosure owed to him arise because of an attorney-client relationship and that he allegedly relied upon the statements made to him by Kaplan because Kaplan was acting as his counsel.

37.     There was no evidence presented at trial to show that the Kaplan Defendants obtained an improper benefit from representing Plaintiff and involve the integrity and fidelity of the attorney.  *Id*.   Therefore, the claims for breach of fiduciary duty, fraud (concealment, non-

---

[11] *See* KD APPX 57-64 (Interrogatory Responses Nos. 2-7)(Petras identifies the same facts to support his claims for legal malpractice, negligence, breach of fiduciary duty, fraud, fraudulent concealment, and negligent misrepresentation, and does not identify any damages independent from the damages sought for legal malpractice).

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

disclosure, or otherwise), conspiracy, negligence, and negligent misrepresentation should be barred, as a matter of law, under the anti-fracturing doctrine.  *See Won Pak*, 313 S.W.3d at 457-58. [12]

**C.    Even Assuming Petras' Claim For Breach Of Fiduciary Duty Survives The Anti-Fracturing Doctrine, Petras' Breach Of Fiduciary Duty Claim Still Fails.**

**1.    Petras does not have standing to bring a claim for Breach of Fiduciary Duty against the Kaplan Defendants.**

38.    In accordance with longstanding Texas law, to recover for breach of fiduciary duty, a plaintiff must establish that the defendant was his or her fiduciary.  *See Myer v. Cuevas*, 119 S.W. 3d 830, 836 (Tex. App.—San Antonio 2003, no pet.).  As a matter of law, in an attorney-client relationship, an attorney will be found to owe certain fiduciary duties to his or her client. *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).  An attorney will not owe such a duty to a non-client.  *See Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 623-24 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (affirming summary judgment on breach of fiduciary duty claim against law firm because no duty as a matter of law to a non-client).

39.    In the context of Petras' breach of fiduciary duty claim, Petras alleges that the Kaplan Defendants failed to adhere to the fiduciary duties owed to *Franklin*.  However, contextually, Petras' claimed is fatally flawed, for without any standing or capacity for Petras to assert claims on behalf of Franklin, any claim for breach of fiduciary duty owed to Franklin is Franklin's, and Franklin's alone, to bring.  Therefore, the claim for breach of any fiduciary duty owed to Franklin should be barred as a matter of law.

---

[12]  *See also, Won Pak*, 313 S.W.3d at 457 ("Whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court.")(citing *Murphy*, 241 S.W.3d at 692).

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

> **2.** **Plaintiff has failed to present legally sufficient evidence to establish breach of a fiduciary duty.**

40.     To prevail on a breach of fiduciary duty claim, the plaintiff must prove that the defendant breached a fiduciary duty.  In this case, Plaintiff asserts that Kaplan owed a fiduciary duty as the result of an attorney-client relationship.  However, the Plaintiff has failed to present any testimony, expert or otherwise, to establish that any breach of such duty occurred.  Accordingly, Plaintiff's claim for breach of fiduciary duty fails as a matter of law.

> **3.** **Petras' Breach of Fiduciary Duty claim further fails on the basis of causation.**

41.     To prevail on a breach of fiduciary duty claim, the plaintiff must prove that the defendant's breach of his or her fiduciary duties proximately caused the plaintiff's damages.  *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  Both proximate and producing cause encompass causation in fact, which requires proof that the defendant's act or omission was a substantial factor in bringing about the injury, without which the injury would not have occurred.  *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995); *Thomas v. CNC Invs., LLP*, 234 S.W.3d 111, 124 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

42.     Petras' sole disclosed damages for the Kaplan Defendants' alleged breach of fiduciary duty was Franklin's failure to pay under the terms of the January 2005 Amended Purchase Agreement.  It was conclusively established that Kaplan was not an officer, director, shareholder, or person who ran the daily operations of Franklin and who could direct Franklin to pay Plaintiff or any other person.

43.     Accordingly, Plaintiff has failed to present any legally sufficient evidence to establish that his sole claim for damages were causally linked to any breach of fiduciary duty by Kaplan.

**D.    Even Assuming Petras' Claim For Fraud Survives The Anti-Fracturing Doctrine, Petras' Fraud Claim Still Fails.**

44.     The Plaintiff failed to present legally sufficient evidence that Kaplan made a false statement of an existing fact.  At best, Plaintiff asserts that Kaplan made a statement that another party would perform in the future.  Therefore, Plaintiff's claim for fraud on this basis fails as a matter of law.

45.     The Plaintiff failed to present legally sufficient evidence that Kaplan made a representation about Kaplan's future performance with present knowledge that Kaplan would not perform.  In this case, Plaintiff does not allege, nor did he present any legally sufficient evidence that Kaplan represented he would perform some act in the future.  Likewise, Plaintiff does not allege, nor did he present any legally sufficient evidence, that Kaplan did not intend to perform as represented.  Therefore, Plaintiff's claim for fraud on this basis fails as a matter of law.

46.     Plaintiff claims that Kaplan committed fraud by omission.  In this case, Plaintiff asserts that Kaplan owed a duty to disclose as the result of an attorney-client relationship. However, the Plaintiff has failed to present any testimony, expert or otherwise, to establish what duty existed under the attorney-client relationship or that any breach of such duty occurred. Accordingly, Plaintiff's claim for fraud by omission fails as a matter of law.

47.     Plaintiff must establish that Kaplan made a representation with the intent that Plaintiff rely upon it.  However, Plaintiff failed to present legally sufficient evidence to establish that Kaplan made a representation with the intent that Plaintiff would rely upon it.

48.     Plaintiff must establish that Plaintiff's reliance, if any, was justified.  However, Plaintiff failed to present legally sufficient evidence to establish that Plaintiff's reliance, if any, was justified.  In particular, Plaintiff claims that Kaplan represented that Mole would put money into Franklin.  However, at the time Plaintiff claims that Kaplan made such representations, Plaintiff believed Mole to be a liar and could not be trusted.  Therefore, Plaintiff's feigned reliance upon what Mole or Kaplan told him was not justified or reasonable.

49.     Plaintiff must establish that Plaintiff's damages were caused by Plaintiff's reliance upon the representation.  In this case, Plaintiff has failed to present legally sufficient evidence to establish that Franklin's failure to pay under the terms of the January 2005 Agreement *was caused* by Plaintiff's reliance upon any representation by Kaplan.  Instead, the evidence conclusively establishes that Franklin's failure to pay *was caused* by Franklin's refusal to fulfill its obligations under the terms of the agreement (because it lacked the funds to do so and was a failing "start up" company).

### E.   Even Assuming Petras' Claim For Negligent Misrepresentation Survives The Anti-Fracturing Doctrine, Petras' Negligent Misrepresentation Claim Fails.

50.     As a matter of law, a claim for negligent misrepresentation requires the defendant to make a false statement of an existing fact.  *See Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.).  A promise to do or refrain from doing an act in the future is not

actionable because it does not concern an existing fact.  *See Miksch v. Exxon Corp.* 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

51.     In this case, Plaintiff has failed to present legally sufficient evidence that Kaplan made a false statement of an existing fact.  At best, Plaintiff asserts that Kaplan made a statement that another party (Mole) would perform in the future.  Therefore, Plaintiff's claim for negligent misrepresentation fails as a matter of law.

52.     Plaintiff must establish that Plaintiff's reliance, if any, was justified.  However, Plaintiff failed to present legally sufficient evidence to establish that Plaintiff's reliance, if any, was justified.  In particular, Plaintiff claims that Kaplan represented that Mole would put money into Franklin.  However, at the time Plaintiff claims that Kaplan made such representations, Plaintiff believed Mole to be a liar and could not be trusted.  Therefore, Plaintiff's feigned reliance upon what Mole or Kaplan told him was not justified or reasonable.

53.     Plaintiff must establish that Plaintiff's damages were caused by Plaintiff's reliance upon the representation.  In this case, Plaintiff has failed to present legally sufficient evidence to establish that Franklin's failure to pay under the terms of the January 2005 Agreement *was caused* by Plaintiffs reliance upon any representation by Kaplan.  Instead, the evidence conclusively establishes that Franklin's failure to pay *was caused* by Franklin's refusal to fulfill its obligations under the terms of the agreement (because it lacked the funds to do so and was a failing "start up" company).

54.     Finally, Plaintiff's sole claim for damages is for what Franklin would or should have paid him under the terms of the 2005 Amended Purchase Agreement.  Stated another way, Plaintiff's sole damage claim is for the benefit of his bargain with Franklin.  However, as a

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

matter of law, benefit-of-the-bargain damages are not legally recoverable under a claim for negligent misrepresentation.  *D.S.A. Inc. v Hillsboro ISD*, 973 S.W.2d 662, 663-64 (Tex. 1998).

55.     Therefore, Plaintiff's claim for negligent misrepresentation fails as a matter of law.

**F.     Even Assuming Petras' Claim For Conspiracy Survives The Anti-Fracturing Doctrine, Petras' Claim For Conspiracy Still Fails On The Basis Of Causation.**

56.     Even assuming Plaintiff's claim for conspiracy survives the anti-fracturing doctrine, Plaintiff failed to present legally sufficient evidence to establish that his sole disclosed damages (*i.e.,* Franklin's failure to pay under the terms of the January 2005 Amended Purchase Agreement) was caused by any conspiracy to commit fraud between or among the Defendants.

**G.     Petras' Claims Are Barred By Waiver.**

57.     As set forth in the agreement between Plaintiff and Kaplan, the Plaintiff waived the claims asserted in this suit.  In particular, Plaintiff and Kaplan agreed as follows:

> You further acknowledge and agree that the Firm's representation of you will not be construed, claimed, or deemed to be a breach of fiduciary relationship, a conflict of interest, or a violation of any other obligation to each of you. Each of you has agreed that you will not claim or contend that the Firm should be or is disqualified from representing each of you in connection with the Requested Representation, or any other matter, related or unrelated.

*See* Def. Ex. 69 and 76

58.     Plaintiff has made no assertion in this suit that this agreement is void or otherwise invalid.  Because Plaintiff's claims are based upon the attorney-client relationship and the obligations arising thereunder, this agreement operates as a bar to Plaintiff's claims herein, as a matter of law.

*DEFENDANTS CHARLES KAPLAN AND KAPLAN & ASSOCIATES, LLP'S*
*BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW*

### H.      Petras' Tort Claims Are Barred By The Economic Loss Doctrine.

59.      In accordance with Texas law, the Economic Loss Doctrine precludes recovery in tort when injury is limited to economic loss relating to a contract and unaccompanied by an independent physical injury to the plaintiff's own person or property. *Regus Mgmt. Grp., LLC v. Int'l Bu. Mach. Corp.*, 2008 WL 1836360, at *6 (N.D. Tex. 2008) (economic loss doctrine, otherwise described as the independent injury rule, essentially bars a plaintiff from attempting to convert a contract action into a tort action); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 301 (Tex. App.—Dallas 2009, no pet.) (tort damages are generally not recoverable unless the plaintiff suffered an injury that is independent and separate from the economic losses recoverable under a breach of contract claim).  "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Southwestern Bell Telephone Co. v. DeLaney*, 809 S.W.2d 493, 494 (Tex. 1991); *see Roubinek v. Select Portfolio Servicing, Inc.*, 2012 WL 2358560, *3 (N.D. Tex. 2012) (granting a motion to dismiss where plaintiff purported to plead a claim for negligence but was seeking damages arising from defendant's alleged failure to perform under the terms of a loan agreement).

60.      In the instant case, Petras seeks to recover tort damages from the Kaplan Defendants, which represent the amount owed by Franklin under the terms of the contract.  As such, not only does Petras fail to plead any personal injury or damage, but the only damage asserted on the basis of Petras' tort claims sounds in contract.  Therefore, Petras' tort claims should be barred as a matter of law.

## V. CONCLUSION

In light of the foregoing arguments, the Kaplan Defendants respectfully request the Court enter an order (1) granting their motion in its entirety; (2) that Plaintiff shall take nothing on his claims against the Kaplan Defendants, and (3) granting the Kaplan Defendants such other and further relief to which they may be justly entitled.

Respectfully submitted,


_/s/ Jeffrey W. Hellberg, Jr._
Jeffery W. Hellberg, Jr.
Texas State Bar No. 00796738
Email: jeff.hellberg@wickphillips.com
J. Sean Lemoine
Texas State Bar No. 24027443
Email: sean.lemoine@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
2100 Ross Ave., Suite 950
Dallas, Texas 75201
214.692.6200
214.692.6255 (fax)

**ATTORNEYS FOR DEFENDANTS
CHARLES KAPLAN AND
KAPLAN & ASSOCIATES, LLP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served on all counsel of record via ECF electronic delivery on this 14th day of February, 2013.


*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.